O

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODOLFO GONZALEZ ROSAS and JACK ANDRES BLUM GABRIEL,<br><br>Plaintiffs,<br><br>v.<br><br>VALEANT PHARMACEUTICALS INTERNATIONAL,<br><br>Defendant. | CASE NO. SACV 08-1260 AG (RNBx)<br><br>ORDER DENYING MOTION FOR SUMMARY JUDGMENT |

In this case, Plaintiffs Rodolfo Gonzalez Rosas ("Rosas") and Jack Andres Blum Gabriel ("Blum") seek to hold Defendant Valeant Pharmaceuticals International ("Defendant") liable under a malicious prosecution theory for instigating criminal action against them in Mexico. Defendant filed a Motion for Summary Judgment ("Motion"), which the Court DENIES.

**BACKGROUND**

In this Motion, Defendant argues that it is entitled to summary judgment for two reasons. First, it argues that its subsidiaries, not it, are the entities responsible for instigating criminal action against Rosas and Blum (collectively "Plaintiffs"), and that it is not liable for the acts of its subsidiaries. Second, it argues that Plaintiffs cannot prove the elements of malicious prosecution.

The following facts are taken from the evidence submitted by the parties and are viewed in the light most favorable to Plaintiffs. These facts are stated here only to give background information on the facts of the case and the parties' arguments, and the facts relevant to the Motion are discussed in greater detail in the Court's analysis.

Defendant is an international corporation with "international commercial facilities" in many continents. (Castillo Decl., Ex. 28.) Two of its subsidiaries in Mexico were Laboratorios Grossman, S.A. ("Grossman") and Valeant Farmaceutica, S.A. de C.V. ("Farmaceutica") (collectively "Mexican Subsidiaries"). (Blott Decl. ¶ 2.)

Grossman hired Blum to be its Director of Commerce. (Blum Depo. 51:14-52:14.) One of Blum's duties was to solicit potential advertising companies and present them to his boss at Grossman, Martin Mercer ("Mercer"), who would make the ultimate decision on which advertising companies to hire. (Blum Depo. 76:5-77:21; 83:22-84:6.)

One such advertising company was Mercadeo Inteligente ("Mercadeo"), a company that Rosas helped start and partially owned. (Rosas Depo. 25:16-20.) Blum presented Mercadeo to Mercer, who hired Mercadeo to provide advertising services to Grossman. (Blum Depo. 76:5-77:21; 83:22-84:6.) Grossman and Mercadeo entered into a one-year agreement for such services. (Rosas Depo. 14:12-14.)

The parties worked well together at first. Mercer testified that he was happy with the work Blum and Mercadeo were doing for Grossman. (Mercer Depo. 79:7-11.) But after awhile, things worsened. According to Plaintiffs, Blum testified that he "was called in and advised that he had violated the Valeant Code of Conduct because of his friendship with Rosas, and he was

1  terminated." (Opp'n 3:2-4 (citing Blum Depo. 7:22-24).) Defendant's testimony differs
2  slightly. Mercer testified that auditors from Grossman determined that Blum was "invoicing in
3  excess of reasonable market value," and then Blum left the company. (Mercer Depo. 45:7-10.)
4  Regardless of the differing testimony, the parties agree that Blum stopped working for the
5  Grossman and signed a severance agreement releasing the Mexican Subsidiaries and "Valeant
6  Pharmaceuticals Internationals [sic], Inc." from certain liabilities relating to Blum's
7  employment. (Castillo Decl., Ex. 20.)

8  Then the action moved to the Mexican courts. Mercadeo filed a civil lawsuit against
9  Grossman to recover compensation for alleged unpaid services. (Marquez Decl. ¶ 1.) Around
10 the same time, Grossman and Farmaceutica filed civil lawsuits against Mercadeo seeking to
11 recover the amount it had paid for services that Mercadeo allegedly didn't perform. (Marquez
12 Decl. ¶¶ 2-3.) Mercadeo succeeded in its lawsuit, which resulted in a "finding that Mercadeo did
13 perform the works requested and received in conformity therewith by [Farmaceutica] y
14 Grossman." (Marquez Decl. ¶ 1 (emphasis removed).) The Court notes that the Marquez
15 declaration uses the Spanish word "y" in place of the English word "and," but finds that un
16 poquito de español is okay here.

17 Shortly after the civil lawsuits were filed, the Mexican Subsidiaries filed a criminal
18 accusation of fraud against Plaintiffs. (Marquez Decl. ¶ 4.) The legal action was done by Edgar
19 Medrano ("Medrano"), who was "the only one who did not report functionally to [Mercer]," and
20 instead "received his instructions from legal counsel corporate." (Mercer Depo. 66:21-67:2.)

21 An arrest warrant issued against Plaintiffs, but Plaintiffs fled and became fugitives instead
22 of submitting to arrest. (Opp'n 6:8-12.) Plaintiffs "petitioned the Mexican Federal Courts for
23 protection[, and] the Mexican Federal Courts held that the arrest warrant lacked grounds and
24 violated the Mexican Constitution." (Opp'n 6:10-12.)

25 The criminal complaint against Plaintiffs was ultimately dismissed. Plaintiffs then filed
26 this lawsuit, alleging that Defendant committed malicious prosecution by instigating the criminal
27 complaint. Defendant now moves for summary judgment.
28

3

**PRELIMINARY MATTERS**

To support its Motion, Defendant has submitted three evidentiary objections. The Court does not rely on the evidence under objection, so the Court need not rule on the objections.

**LEGAL STANDARD**

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. *Id.* at 322-23. If the non-moving party meets this burden, then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

**ANALYSIS**

Defendant argues that summary judgment should be granted because (1) Defendant is not liable for the acts of its subsidiaries, and (2) Plaintiffs cannot prove the elements of malicious prosecution. The Court addresses these arguments in turn.

**1.     DEFENDANT MAY BE HELD LIABLE FOR MEDRANO AND MERCER'S ACTS**

Defendant argues that it is entitled to summary judgment because, as a parent company, it is not liable for the actions of its subsidiaries. Plaintiffs respond that they seek to hold Defendant liable under two theories. First, Plaintiffs argue that "the persons involved in the decision to initiate the criminal complaint were officers and agents of" Defendant. (Opp'n 7:15-19.) This argument focuses on Medrano and Mercer and asserts that they acted as Defendant's agents. Second, "Plaintiffs also seek to hold [Defendant] liable indirectly because [the Mexican Subsidiaries] acted as the agents of [Defendant] in serving as the complaining parties in the criminal action." (Opp'n 9:3-5.)

**1.1     Whether Medrano and Mercer were Defendant's agents**

Plaintiffs argue that Medrano and Mercer were Defendant's agents when they helped initiate the criminal complaint against Plaintiffs. The Court finds that Defendant has not met its burden of showing that no genuine issue of material fact exists on this point.

In Plaintiffs' Opposition, Plaintiffs presented evidence tending to show that Medrano and Mercer were Defendant's agents. Concerning Medrano, Plaintiffs present evidence that (1) he "reported to [Defendant's] general counsel in California . . . *[and] received his instructions from [general counsel]*;" (2) he "reported [to Defendant] on all of [Defendant's] activity in [Latin America];" and (3) "[w]hen Medrano reported to Corporate Legal about the plan to initiate a criminal action . . . [Defendant's] Corporate Legal responded: did *we* initiate a criminal procedure . . . ?" (Opp'n 7:27-8:19 (first emphasis added, second emphasis in original).) Plaintiffs also provide evidence that Medrano identified himself in the signature of his emails as:

1  Edgar Medrano
   Legal Counsel for Latin America
2  Valeant Pharmaceuticals International

3

4 (Castillo Decl., Ex. 45.) Further, Plaintiffs provide evidence that Medrano told Defendant's

5 general counsel in California, "[w]e are working in gathering further evidence in order to initiate

6 a criminal procedure against this person . . . ." (*Id*.) And concerning Mercer, Plaintiffs provide

7 evidence, among other things, that Mercer identified himself in emails as "the 'Executive Vice

8 President, Latin American Operations, Valeant Pharmaceuticals International." (Mot. 8:7-10;

9 Castillo Decl., Ex. 44.)

10 In its Reply, Defendant argues that it "is not directly responsible for the decision to

11 present a criminal accusation against [Plaintiffs]." (Reply 8:12-13.) Defendant states, "none of

12 these individuals [identified by Plaintiff] are, or ever were, officers or employees of

13 [Defendant]." (Reply 9:1-4.) It is telling that Defendant would make such a statement, because

14 even if this were true, it would not preclude them from being Defendant's agents, which is

15 broader than officers and employees.

16 At this stage, the Court finds that Plaintiffs may proceed on a theory that Medrano and

17 Mercer were Defendant's agents when they helped instigate the criminal complaint against

18 Plaintiffs. Notably, Defendant does not apply authorities on agency law to Medrano and Mercer.

19 It is Defendant's burden to demonstrate an absence of a genuine issue of material fact, *Celotex*,

20 477 U.S. at 323, and Defendant has failed to meet its burden.

21 Defendant argues that a subsidiary can only be an agent of a parent when the parent has

22 essentially "taken over performance of the subsidiary's day-to-day operations." (Reply 3:2-6

23 (quoting *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 542 (2000)). But

24 since here, the Court finds that the individuals Medrano and Mercer may be agents of Defendant,

25 it need not address this argument.

26 Defendant's argument that Valeant is not responsible for presenting a criminal accusation

27 against Plaintiffs fails at the summary judgment stage.

28

6

**1.2 Conclusion**

At this stage, Plaintiffs may proceed on a theory that Defendant is liable for the acts of Medrano and Mercer.

## 2. PLAINTIFFS MEET THE ELEMENTS OF MALICIOUS PROSECUTION

Defendant also argues that it is entitled to summary judgment because Plaintiffs cannot establish the elements of malicious prosecution. "Under California law, a malicious prosecution claim is disfavored and requires proof that the underlying litigation: (1) was *commenced* by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice." *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting *Zamos v. Stroud*, 32 Cal. 4th 958, 966 (2004)) (emphasis removed).

Here, Defendant attacks only the elements of probable cause and malice.

**2.1 Probable Cause**

Defendant argues that Plaintiffs fail to establish a disputed issue of fact regarding probable cause. The Court disagrees.

"Probable cause . . . turns on whether the underlying claim was 'legally tenable, as determined on an objective basis.'" *Tucker*, 515 F.3d at 1031 (quoting *Padres L.P. v. Henderson*, 114 Cal. App. 4th 495 (2004)). Probable cause "is measured by the state of the defendant's knowledge, not by his intent . . . . [T]he standard applied to defendant's consciousness is external to it. The question is not whether he thought the facts to constitute probable cause, but whether the court thinks they did." *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863, 881 (1989) (quoting *Dir. Gen. v. Kastenbaum*, 263 U.S. 25, 27-28 (1923)). To

1  determine probable cause, the court must ask "whether a reasonable person would have thought
2  that the claim was legally tenable . . . ." *Tucker*, 515 F.3d at 1031.

3  "Probable cause may be established by the defendants" in a malicious prosecution case by
4  proving "that they have in good faith consulted a lawyer, have stated all the facts to him, have
5  been advised by the lawyer that they have a good cause of action and have honestly acted upon
6  the advice of the lawyer." *Palmer v. Zaklama*, 109 Cal. App. 4th 1367, 1383 (2003) (quoting
7  *DeRosa v. Transamerica Title Ins. Co.*, 213 Cal. App. 3d 1390, 1397-1398 (1989)) (quotation
8  marks omitted). "Good faith reliance on the advice of counsel, after truthful disclosure of all the
9  relevant facts, is a complete defense to a malicious prosecution claim." *Bisno v. Douglas*
10 *Emmett Realty Fund 1988*, 174 Cal. App. 4th 1534, 1544 (2009) (citing *Bertero v. Nat'l Gen.*
11 *Corp.*, 13 Cal.3d 43, 53–54 (1974)).

12 Under these rules, Defendant argues that it had probable cause to initiate the criminal
13 complaints because Defendant acted on the good faith advice of outside counsel, Jesus Origel
14 ("Origel"). To support this argument, Defendant provides evidence showing that:

> the Mexican subsidiaries retained outside counsel, Jesus Origel; that
> Origel oversaw an audit of Blum's sales and marketing department;
> that Origel reported to Mercer the results of the audit; that Origel
> advised Mercer that based upon the results of the audit there was
> sufficient cause to pursue legal action against blum; and that Origel
> further advised Mercer that the only option to pursue legal action
> against Blum was the [initiate the process leading to the criminal
> complaints].

21 (Reply 10:20-26.)

22 Plaintiffs respond that the advice of counsel rule does not apply because there is evidence
23 that Defendant did not truthfully disclose all of the relevant facts to counsel. Plaintiffs' primary
24 example of Defendant's failure to fully disclose the facts is that Defendant knew that Mercadeo
25 performed the services at issue, but Defendant did not tell this to Origel.

26 Defendant argues that the full disclosure requirement is satisfied. Even if Defendant did
27 not directly tell Origel that Mercadeo had performed the underlying services, Defendant argues
28 that "Origel was the Mexican [S]ubsidiaries' legal counsel defending them against the civil

1 action that Mercadeo had brought in October 2005, to recover for services it claimed to have
2 provided . . . ." (Reply 12:1-3.) Defendant cites evidence that "Mercadeo's civil complaint set
3 forth accurately and fully all the material facts related to its claim that Mercadeo had provided
4 services . . . and was entitled to payment for those services." (Reply 12:4-7 (citing Rosas Depo.
5 144:2-146:5).) Thus, according to Defendant, "Origel was actually aware of all the material
6 facts related to this dispute," (Reply 12:7-9), and under California law, "the rule of full
7 disclosure is satisfied when the lawyer has obtained the undisclosed information from some
8 other source," *Bisno*, 174 Cal. App. 4th at 1546.

9 The Court finds that, at this stage, there is a disputed issue of material fact that Defendant
10 did not fully disclose all relevant facts to Origel. The evidence supports a reasonable inference
11 that Defendant knew that Mercadeo actually performed services and did not tell Origel. Further,
12 Defendant's argument that Origel was actually aware of all material facts is unpersausive.
13 While Mercadeo's civil complaint may have stated that Mercadeo performed services, Origel's
14 awareness of the complaint only made him aware that Mercadeo *alleged* that it performed
15 services. If Defendant had admitted to Origel that Mercadeo's allegations were actually true, it
16 would have been a different issue entirely. Since there is evidence that no such admission was
17 made, Defendant may not rely on the advice of counsel exception.

18 At this stage, the Court finds that there is an issue of fact concerning whether Defendant
19 had probable cause to initiate the criminal complaint against Plaintiffs.

21 **2.2 Malice**

23 Defendant also argues that Plaintiffs cannot establish the malice element of malicious
24 prosecution. But Defendant rests this argument on its assertion that there was probable cause.
25 (*See* Mot. 23:19-22 ("As demonstrated above, probable cause existed for [Defendant's]
26 subsidiaries to present to the prosecutor a possible criminal action for fraud against plaintiffs.
27 Therefore, as a matter of law, [the Mexican Subsidiaries] also acted without malice.").) The

Court rejects Defendant's argument concerning probable cause, so it must also reject Defendant's argument concerning malice.

### 2.3 Conclusion

The Court rejects Defendant's arguments concerning Plaintiffs' malicious prosecution claim.

**DISPOSITION**

The Motion is DENIED.

IT IS SO ORDERED.

DATED: May 12, 2010

_____
Andrew J. Guilford
United States District Judge